IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GULAB SHAFI-UDDIN, | ) |
| | ) |
| Plaintiff, | ) 03 C 783 |
| | ) |
| v. | ) Judge Ronald A. Guzmán |
| | ) |
| VILLAGE OF ITASCA, a Municipal | ) |
| Corporation, and ROBERT NISSEN, | ) |
| individually and as an employee/agent | ) |
| of the Village of Itasca, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gulab Shafi-Uddin has sued Defendant Village of Itasca ("Village")[1] for discrimination based on age, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2614 *et seq.*, for violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*, for violation of procedural due process under 42 U.S.C. § 1983 ("section 1983"), and for breach of contract.[2] Pending is the Village's motion for summary judgment. For the reasons set forth below, the Court grants the motion as to Counts I - VII and declines to exercise supplemental jurisdiction over Count VIII.

---

[1] The Complaint was also brought against Robert Nissen, Plaintiff's supervisor at the Village. On October 27, 2003, the Court granted Plaintiff's Motion to Voluntarily Nonsuit Mr. Nissen.

[2] Although Shafi-Uddin also sued the Village for retaliation, in his response to the motion for summary judgment, he states that he has abandoned the claim. The Court thus grants the Village's summary judgment motion as to Count VII.

# FACTS

The following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. The Village of Itasca ("Village") is a municipal corporation located in DuPage County, Illinois. (Def.'s LR 56.1(a)(3) ¶ 2.) Gulab Shafi-Uddin was born in Hyderabad, India and became a United States citizen in 1989. (*Id.* ¶ 7.)

In 1990, the Village hired Shafi-Uddin as a plan reviewer for the building department. (*Id.* ¶ 9.) During this time, the department was composed of the following positions: the department director, two code enforcement positions, two clerical positions and various additional inspectors with which the Village contracted for particularized inspections. (*Id.* ¶ 10.) The two code enforcement positions included Shafi-Uddin's position of plan reviewer and the building inspector position held by Gregg Tracey. (*Id.* ¶¶ 10, 11, 13.) Robert Nissen was the Director of the Village's building department at all times relative to the Complaint. (*Id.* ¶ 12.) Until July 2000, Shafi-Uddin adequately met the requirements of his position. (*Id.* ¶ 17.)

Shafi-Uddin requested and received vacation time in order to travel to India starting July 5, 2000. (*Id.* ¶ 28) Shafi-Uddin was scheduled to return to work on July 17, 2000. (*Id.*) On July 14, 2000, while on vacation in India, Shafi-Uddin experienced chest pains and was hospitalized. (*Id.* ¶ 31.) The same day, Shafi-Uddin faxed to the Village a letter that indicated he was unable to return to work and requested sick leave until he was able to return to work. (*Id.* ¶ 32.) The fax included a letter from Shafi-Uddin's doctor, which stated Shafi-Uddin required complete rest for one month. (*Id.* ¶¶ 32, 33.)

On July 14, 2000, Nissen responded to Shafi-Uddin and advised Shafi-Uddin a medical exam by a physician would be required before he returned to work. (*Id.* ¶ 35.) On August 14, 2000, the Village received another note from Shafi-Uddin's doctor indicating Shafi-Uddin

2

required another month of rest. (*Id.* ¶ 36.) On August 22, 2000, the Village sent a letter to Shafi-Uddin informing him that his sick leave had been exhausted as of August 8, 2000. (*Id.* ¶ 37.) The Village informed Shafi-Uddin he was eligible for twelve weeks of leave under the Family and Medical Leave Act ("FMLA") and instructed him to complete the FMLA application within fifteen days. (*Id.*) On September 6, 2000, a few days after Shafi-Uddin returned the FMLA application, the Village received another note from Shafi-Uddin's doctor prescribing another month of rest. (*Id.* ¶ 46.) In October 2000, the Village received two additional letters from Shafi-Uddin's doctor, both of which required Shafi-Uddin to rest for another month. (*Id.* ¶ 48.) On November 4, 2000, the Village received another letter from Shafi-Uddin's doctor, which stated that Shafi-Uddin was stabilized and would be allowed to travel after November 15, 2000 and return to work on a full-time basis within a month. (*Id.* ¶ 56.) On November 30, 2000, Shafi-Uddin returned to the United States. (*Id.* ¶ 59.)

Due to the volume of work and Shafi-Uddin's absence, the Village had TPI, a building construction inspection company that contracted with the Village, assign Bill Havel to conduct inspections on behalf of the Village on a part-time basis. (*Id.* ¶¶ 43, 44.) During Shafi-Uddin's absence, Nissen informed Dave Williams, the Village Administrator, that the building department needed a full-time person. (*Id.* ¶ 47.) In addition, Williams instructed Carole Schreiber, the Village Clerk, to be sure that the Village provided Shafi-Uddin all of the leave to which he was legally entitled, as well as some additional leave, prior to terminating him. (*Id.* ¶ 52.) Due to the continued absence of Shafi-Uddin, the indefinite return date, and the pressing needs of the building department, Williams decided that Shafi-Uddin should be terminated. (*Id.* ¶ 53.) On November 1, 2000, the Village sent written notification to Shafi-Uddin informing him of his termination. (*Id.* ¶ 54.)

3

In March 2001, Shafi-Uddin applied for employment with the City of Des Plaines ("Des Plaines") and was considered for the position of water operator. (*Id.* ¶ 71.) Des Plaines interviewed Shafi-Uddin on March 20, 2001. (*Id.* ¶ 72.) During the interview, Shafi-Uddin stated he was terminated from the Village when he traveled to India and was unable to return due to illness. (*Id.* ¶ 73.) The Director of Human Resources for Des Plaines observed during the interview that Shafi-Uddin interrupted speakers and was difficult to understand. (*Id.* ¶ 74.) On March 26, 2001, Des Plaines requested employment verification from several of Shafi-Uddin's previous employers. (*Id.* ¶ 75.) On March 30, 2001, Nissen returned the employment verification to Des Plaines, which stated Shafi-Uddin had performed satisfactorily and was not eligible for rehire, and Nissan included the following statement as Shafi-Uddin's reason for leaving:

> Mr. Shafi-Uddin was separated from the Village voluntarily under the direction of a licensed and practicing physician. The Village was advised of the reason for leaving, Mr. Shafi-Uddin was taken ill while on a visit to India and notified the Village of the fact. Mr. Shafi-Uddin exhausted all of his medical leave and was notified of the separation prior to being released to return to work.

(*Id.* ¶ 76.) The language in the employment verification came word for word from a determination by the Illinois Department of Employment Security. (*Id.* ¶ 77.) Des Plaines' decision not to offer employment to Shafi-Uddin was not because of the employment verification information sent by the Village. (*Id.* ¶ 79.) On May 30, 2001, Shafi-Uddin filed a charge with the EEOC that stated:

> +I [sic] was hired by the Respondent [Village] on July 20, 1990 as a Plan Examiner Inspector. On July 14, 2000 I was hospitalized due to my disability. The Respondent failed to provide me with a reasonable accommodation and terminated my employment upon expiration of my twelve weeks of family medical leave. Additionally, Respondent is disclosing confidential medical information to prospective employers.
> I believe that I have been discriminated against because of my disability in

4

> vioaltion [sic] of the Americans with Disabilities Act of 1990, as amended and
> one the basis of my national origin, East Indian in violati [sic] of Title VII of the
> Civil Rights Act of 1964, as amended in that, non-East Indian employees have
> given [sic] up to one year of leave and were not terminated as I was.

(*Id.* ¶ 83.) The EEOC charge did not include Shafi-Uddin's age, date of birth or religious denomination. (*Id.* ¶ 84.) Shafi-Uddin only checked the boxes marked "National Origin" and "Disability" (*Id.* ¶ 85.) The ages and religious denominations of other employees who were allegedly given more favorable treatment were not provided in Shafi-Uddin's EEOC charge. (*Id.* ¶ 86.) Shafi-Uddin received a notice of his right to sue from the EEOC on November 6, 2002, and filed the instant complaint on February 3, 2003.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

Local Rule 56.1 sets forth the obligations of each party moving for and opposing summary judgment. LR 56.1. A moving party must serve and file any affidavits and other materials referred to in Rule 56(e), a supporting memorandum of law, and a statement of

5

material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. LR 56.1(a). A party opposing a motion for summary judgment is required to serve and file any opposing affidavits and other materials referred to in Rule 56(e), a supporting memorandum of law, a concise response to the movant's statement of facts and a statement of additional facts that require the denial of summary judgment. LR 56.1(b)(3)(A)-(B). The opposing party's failure to controvert the moving party's statement of facts results in the moving party's version of the facts being deemed admitted. LR 56.1(b)(3)(B). The Seventh Circuit has repeatedly upheld the strict enforcement of Local Rule 56.1. *See Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1102-03 (7th Cir. 1990) (discussing application of Local Rule 12(m), the predecessor to Local Rule 56.1); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (same).

With these principles in mind, the Court notes that Shafi-Uddin has failed to comply with Local Rule 56.1(b). Shafi-Uddin did not respond to any one of the Village's eighty-eight statements of fact as required by the Local Rule. Furthermore, Shafi-Uddin's submissions to the Court, including his response to the summary judgment motion and his statement of additional facts,[3] do not conform to the Local Rule's clear mandate that a party opposing summary judgment provide the Court with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A). Instead, Shafi-Uddin provides the Court with perfunctory and underdeveloped legal arguments and a series of conclusory assertions. That Shafi-Uddin has not complied with Local Rule 56.1 is not lost on the Village,

---

[3] Shafi-Uddin's statement of additional facts is mislabeled. Local Rule 12 has been re-titled LR 56.1, and the Court will treat it as if it were labeled correctly.

which argues that its entire statement of facts should be deemed admitted.

Shafi-Uddin's failure to respond as required and provide any citation to the record in support of any denial of any statement of fact violates the letter of the local rule, and accordingly, paragraphs one through eighty-eight of the Village's statement of facts are deemed admitted. In addition, his failure to provide any citation to the record in support of his Local Rule 56.1(b)(3)(B) submission precludes the Court's consideration of Shafi-Uddin's statement of additional facts. This renders moot the Village's motion to strike Shafi-Uddin's affidavit and bar Shafi-Uddin's medical records.

Nevertheless, Shafi-Uddin's failure to comply with the requirements of Local Rule 56.1 does not mean that summary judgment will automatically be granted in the Village's favor. The Court must still evaluate all the facts in the light most favorable to the non-moving party while "drawing all reasonable inferences in [his] favor." *Haywood v. Lucent Techs.*, 323 F.3d 524, 529 (7th Cir. 2003).

## I. Claims Beyond Scope of EEOC Charge

Among other things, Shafi-Uddin alleges the Village discriminated against him on the basis of age (Count I) and religion (Count III). In order for a plaintiff to bring a federal claim of age or religious discrimination, he must have filed a charged with the EEOC alleging such a violation. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). The purpose of this requirement is to provide the EEOC an opportunity to settle the dispute as well as provide the employer some warning of the conduct alleged by the employee. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In Shafi-Uddin's EEOC charge, he explicitly stated that the discrimination alleged in the charge was based on his disability and national origin. The only

7

marked boxes were those for "national origin" and "disability." Shafi-Uddin did not allege age- or religion-based discrimination in his EEOC charge.

However, a plaintiff may pursue a claim not explicitly included in an EEOC complaint if his allegations fall within the scope of the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In determining whether a complaint's allegations fall within the scope of the EEOC charge, the court looks at whether they are reasonably related to charges actually contained in the EEOC complaint. *Id.* at 202. If they are, the court then determines whether the claims reasonably could have developed from the EEOC's investigation of the charges before it. *Id.*

> In his EEOC charge, Shafi-Uddin states the following:
>
> I believe that I have been discriminated against because of my disability in vioaltion [sic] of the Americans with Disabilities Act of 1990, as amended and one the basis of my national origin, East Indian in violati [sic] of Title VII of the Civil Rights Act of 1964, as amended in that, non-East Indian employees have given [sic] up to one year of leave and were not terminated as I was."

(Def.'s LR 56.1(a)(3) ¶ 83.) Shafi-Uddin's EEOC charge mentions neither his age, date of birth or religious denomination nor the ages and religious denominations of other employees who were allegedly given more favorable treatment. (*See id.* ¶¶ 84-86.) There is nothing in Shafi-Uddin's charge that would reasonably lead to an EEOC investigation into whether the Village discriminated against Shafi-Uddin based on age or religion. (*See id.*) Therefore, the Court grants the Village's motion as to Counts I and III.

## II. Claims Beyond the Statute of Limitations

Shafi-Uddin's complaint alleges a violation of the FMLA (Count IV) and a violation of procedural due process under section 1983 (Count VII). Both claims must be brought within the

applicable statute of limitations. Shafi-Uddin has failed to bring either claim within the statutory time period, and therefore the claims are time-barred.

## A. FMLA Claim

The FMLA entitles a qualified employee to twelve weeks of leave, paid or unpaid, during any twelve-month period due to a serious health condition that makes the employee unable to perform the functions of the position. 29 U.S.C. § 2612(a)(1)(D). The Act entitles the employee to be reinstated after the end of the twelve-week period. *Id.* § 2614(a)(1). A cause of action under the FMLA must be brought within two years from the action that allegedly constituted the violation. *Id.* § 2617(c)(1). The triggering event in this case was Shafi-Uddin's termination, which occurred on November 1, 2000. (Def.'s LR 56.1(a)(3) ¶ 54). Shafi-Uddin's complaint was not filed until February 3, 2003, more than two years after he was terminated.

However, if the employer willfully violated the Act, the statute of limitations is extended an additional year. *Id.* § 2617(c)(2). In order to establish a willful violation, a plaintiff must show that the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

The Village had approved vacation time for Shafi-Uddin to travel to India from July 5 to July 17, 2000. (Def.'s LR 56.1(a)(3) ¶ 28.) On July 14, 2000, after experiencing chest pains and being hospitalized in India, Shafi-Uddin informed the Village, via fax, that he was not able to return to work and requested "sick leave" until he got better. (*Id.* ¶¶ 31-33.) The Village notified Shafi-Uddin that his sick leave had been exhausted as of August 8, 2000 and he was entitled to twelve weeks of leave under the FMLA. (*Id.* ¶¶ 37.) The FMLA allows an employer

9

to count retroactively previously approved paid leave as FMLA leave. *See* 29 C.F.R. § 825.208(d) (providing an example of valid retroactive application of FMLA leave when an employee is on approved vacation leave, incurred a FMLA qualified injury and requested extension of leave). The U.S. Supreme Court has determined that the twelve-week period of the FMLA is both a minimum and maximum amount of time and does not create a windfall for an employee whose employer did not immediately designate the leave as a twelve-week leave under the FMLA. *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 88 (2002).

Shafi-Uddin argues that the Village willfully violated the FMLA by designating July 14, 2000 as the applicable start date of the FMLA leave. Shafi-Uddin believes the start date should be August 22, 2000, when the Village notified Shafi-Uddin of his eligibility of FMLA leave or even September 1, 2000, when the Village received his completed FMLA leave application.

This Court has consistently refused to adopt the viewpoint asserted by Shafi-Uddin. *See Sewall v. Chi. Transit Auth.*, No. 99 C 8372, 2001 WL 40802, at *5 (N.D. Ill. Jan. 16, 2001) (finding no law supporting the argument that plaintiff's leave should have begun when he was given the FMLA application or when he actually completed the FMLA application); *see also Myrick v. Aramark Corp.*, No. 02 C 5890, 2004 WL 906176, at *9 (N.D. Ill. Apr. 28, 2004) (holding that starting leave at time of FMLA approval would be contrary to purpose of FMLA).

The period between July 14, 2000 (when Shafi-Uddin notified the Village of his condition) and November 1, 2000 (his date of termination) consists of fifteen weeks and two days. The Village provided well over twelve weeks of leave before terminating his employment. It is undisputed that Shafi-Uddin did not return to the United States until November 30, 2000, and so he would have been unable to return to work on the date his FMLA leave should have ended even if the Court were to hold that September 1, 2000 constituted the start date of his

10

FMLA leave. The undisputed facts establish that the Village did not willfully violate the requirements of the FMLA. Thus, there is no justification for an extension of the statute of limitations, and the Court grants the Village's motion for summary judgment as to Count IV.

## B. Section 1983 Claim

In his section 1983 claim, Shafi-Uddin alleges that the Village violated his constitutional right to procedural due process when it terminated his employment. Actions under section 1983 should be characterized as personal injury claims and are governed by the personal injury statute of limitations in the state where the alleged injury occurred. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). For actions brought in federal court in Illinois, the applicable statute of limitations is Illinois' two-year statute of limitations for personal injury actions. *Smith v. City of Chi. Heights*, 951 F.2d 834, 839 (7th Cir. 1992); 735 ILL. COMP. STAT. 5/13-202.

Shafi-Uddin argues that his section 1983 claim did not accrue until March 2003 because he was not reasonably aware of the violation until he consulted a lawyer. (Pl.'s Resp. at 26.) While state law determines the statute of limitations, federal law determines the accrual of a claim. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). A civil rights claim accrues when the plaintiff knows or should know that his constitutional rights have been violated. *Id.* Therefore, Shafi-Uddin's claim accrued in November 2000, when he returned to the United States and learned of his termination, or at the very latest on December 3, 2000, when he reported to the Village to collect his belongings. (Def.'s LR 56.1(a)(3) ¶¶ 54, 60.) Shafi-Uddin's Complaint in which he alleged a section 1983 claim was not filed until February 3, 2003, which was beyond the two-year statute of limitations, and thus the claim time-barred. The Court grants the Village's summary judgment motion as to Count VI.

11

## III. Title VII National Origin Discrimination Claim

In Count II, Shafi-Uddin alleges that the Village discriminated against him based on his national origin in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

Shafi-Uddin can defeat the Village's summary judgment motion by creating a genuine issue of material fact regarding whether the Village's action was motivated by an impermissible purpose either through the direct method or the indirect burden-shifting method. *See Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method, a plaintiff establishes, whether by direct or circumstantial evidence, that the employer's actions were motivated by a discriminatory animus. *Id.* Under the indirect burden-shifting method, the plaintiff may raise an inference of discrimination by offering sufficient evidence to establish a *prima facie* case. *Id.* In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside of his classification more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The failure to satisfy any one of these elements is fatal to a plaintiff's claim. *Jorden v. Walmart Stores, Inc.*, 332 F. Supp. 2d 1172, 1177-78 (C.D. Ill. 2004).

Shafi-Uddin does not attempt to establish national origin discrimination via the direct method. As such, his claim must be reviewed under the *McDonnell Douglas* burden-shifting method. Both parties agree that Shafi-Uddin was born in India and was terminated from his

12

position with the Village. Thus, Shafi-Uddin satisfies the requirements of the first and third prongs of a *prima facie* case. However, Shafi-Uddin fails to satisfy the second and fourth prongs.

## A. Satisfactory Job Performance

In order to satisfy the second prong of the *prima facie* case, the plaintiff must show he was performing his job satisfactorily. *McDonnell Douglas Corp.*, 411 U.S. at 802-05. Shafi-Uddin attempts to do so by asserting that he "always performed his job in a competent manner" and "received above average evaluations from his supervisors." (Pl.'s Resp. at 18.) Shafi-Uddin's own opinion carries no weight in establishing a *prima facie* case. *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996). The mere assertion that one has performed satisfactorily is insufficient to overcome the employer's good faith business judgment regarding the employee's performance. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). It is undisputed that Shafi-Uddin did not work for a period of five months. (Def.'s LR 56.1(a)(3) ¶¶ 32, 36, 46, 48, 56.) It is also undisputed that due to Shafi-Uddin's extended absence, the lack of adequate communication and the needs of the department, the Village believed Shafi-Uddin was not performing satisfactorily and deemed it necessary to terminate him. (Def.'s LR 56.1(a)(3) ¶ 53.) Shafi-Uddin has failed to present any genuine issue as to the material fact regarding whether he was performing his job satisfactorily or meeting the legitimate expectations of his employer.

## B. Similarly Situated Employees

Employees are similarly situated if they are directly comparable in all material respects.

13

*Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). In determining whether employees are similarly situated, a court must look at all relevant factors, the number of which depends on the context of the case. *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). Furthermore, when a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee, a plaintiff must show that he and the more favorably treated employee dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Peele*, 288 F.3d at 330; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a *prima facie* case of discrimination for the simple reason that different supervisors may exercise their discretion differently. *Radue*, 219 F.3d at 617-18.

Shafi-Uddin compares himself to five other employees in the Itasca Community Development Department. These employees were white and born in the United States. Shafi-Uddin asserts each one was treated more favorably because they received time off without loss of employment after they exhausted their accrued vacation and sick pay. Shafi-Uddin fails to identify the specific positions held by these employees, the supervisor or decision maker that allegedly treated each of these employees more favorably, or the circumstances in which such decisions were made. Failure to offer such facts, on an issue as to which Shafi-Uddin bears the burden of proof, means that he has failed to raise a genuine issue of fact as to whether similarly situated employees were treated more favorably. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001). Because Shafi-Uddin has failed to establish a *prima facie* case of national origin discrimination, the Court need not address his pretext argument. *See Foster v. Arthur Anderson,*

*LLP*, 168 F.3d 1029, 1036 (7th Cir. 1999). The Court grants the Village's summary judgment motion as to Count II.

## IV. ADA Claim

In Count V, Shafi-Uddin alleges that the Village violated the ADA. Shafi-Uddin claims the Village failed to reasonably accommodate his disability and that the Village's written response to a questionnaire sent by the City of Des Plaines violated the terms of the ADA.

The ADA prohibits employers from discriminating against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Discrimination occurs when an employer fails to make reasonable accommodations to the "known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Therefore, to prevail on an ADA claim, the plaintiff must show that he has a disability, that he is otherwise qualified for the job, and that his employer refused to make a reasonable accommodation for his disability. *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895-96 (7th Cir. 2003).

### A. Qualified Individual

In order to succeed in an ADA claim, the plaintiff bears the burden of establishing that he is a qualified individual with a disability. *Ross v. Ind. State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.

§ 12111(8). The determination regarding whether an individual is such a qualified individual is made at the time of the employment decision. *Ross*, 159 F.3d at 1013-14. A qualified individual is one who has "the requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires" and can perform the essential functions of the position. 29 C.F.R. § 1630.2(m). An inability to do the job's essential tasks means that one is not a qualified individual under the ADA. *Byrne v. Avon Prods.*, 328 F.3d 379, 380 (7th Cir. 2003). "[A]n employee who does not come to work cannot perform the essential functions of his job." *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) (internal quotations omitted); *see Byrne*, 328 F.3d at 380 (stating the "inability to work for a multi-month period removes a person from the class protected by the ADA").

Shafi-Uddin concedes that he was unable to work from July 14, 2000 to at least December 1, 2000. (Def.'s LR 56.1(a)(3) ¶¶ 56, 59.) His inability to work for almost five months disqualifies Shafi-Uddin from the protections of the ADA because the Village was not required to hold open a position for such a protracted and indefinite amount of time.

## B. Disclosure of Information

Shafi-Uddin also argues the Village violated the ADA when it responded to a questionnaire provided by the City of Des Plaines with regard to Shafi-Uddin's employment application. Unfortunately, Shafi-Uddin provides no legal justification for this position. Shafi-Uddin also misstates the facts in alleging this claim by stating the Village disclosed he had a serious medical condition. Parties who want to distinguish or alter existing law must acknowledge its force; they may not pretend that the law favors their view and impose on the court or their adversaries the burden of legal research to uncover the basic rule. *In re Cent. Ice*

*Cream Co.*, 836 F.2d 1068, 1073 (7th Cir. 1987).

The ADA considers the results of any medical examination required by an employer to be confidential. 42 U.S.C. § 12112(d). In this case, the disclosure of which Shafi-Uddin complains was not of the result of an examination ordered by the Village, but of voluntary disclosures that Shafi-Uddin made to the Village as well as to the City of Des Plaines. This type of disclosure is not covered under the ADA and therefore does not violate any of its provisions. *See Cash v. Smith*, 231 F.3d 1301, 1307-08 (11th Cir. 2000); *see also Rohan v. Networks Presentation*, LLC, 175 F. Supp. 2d 806, 814 n.12 (D. Md. 2001) (stating that "[c]ourts in several circuits have read 42 U.S.C. § 12112(d) as requiring confidentiality of employee medical information only when the employer obtains this information as a result of an employee health program or an inquiry").

In *Cash v. Smith*, the employee told her employer that she had diabetes and the employer then told the employee's co-workers of her condition. 231 F.3d at 1307. The Eleventh Circuit determined this exchange did not fall under the ADA disclosure provisions because the defendant-employer did not obtain the employee's medical condition from a required medical exam, but from the personal disclosures of the employee. *Id.* at 1307-08. Analogous to the facts in *Cash*, the information disclosed by the Village was not part of a confidential medical exam, and therefore it is not protected by the ADA's confidentiality requirements.

In sum, the ADA only requires an employer to provide reasonable accommodations to qualified individuals with a disability at the time of the employment decision. Shafi-Uddin, by his own admissions, was not a qualified individual under the ADA. Furthermore, Shafi-Uddin has failed to establish how Nissen's disclosure violates the ADA. Therefore, the Court grants the Village's motion as to Count V.

## V. Breach of Contract Claim

Pursuant to 28 U.S.C. § 1367(c)(3), the Court in its discretion, having dismissed all claims over which it has original jurisdiction, declines to exercise supplemental jurisdiction over Shafi-Uddin's state law claim alleging a breach of contract (Count VIII).

## CONCLUSION

For the reasons set forth above, the Court grants the Village of Itasca's motion for summary judgment as to Counts I through VII and declines to exercise supplemental jurisdiction over Count VIII [doc. no. 38-1]. The Court grants the Village's motion to deem admitted its statement of facts [doc. no. 57-1] and motion to strike Shafi-Uddin's statement of additional facts [doc. no. 58-1]. The Court deems moot the Village's motion to strike Shafi-Uddin's affidavit [doc. no. 56-1] and Shafi-Uddin's medical records [doc. no. 59-1]. This case is hereby terminated.

**SO ORDERED**  **ENTERED**

*/s/ Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge

*March 25, 2005*